```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
                              AT TACOMA
```

RECEIVED MAY 3 1 2002
OFFICE OF THE ATTORNEY GENERAL
LABOR & PERSONNEL DIVISION

FILED LODGED RECEIVED JUN 03 2002 CLERK US DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA

KATHLEEN M. HOUSE,                )   No. C98-5262
                                  )
            Plaintiff,             )   AFFIDAVIT IN SUPPORT OF PLAINTIFF'S
                                  )   MOTION FOR CONTINUANCE OF DISCOVERY
     vs                           )
                                  )
WASHINGTON STATE DEPARTMENT OF FISH )
                                  )
AND WILDLIFE, AND THE STATE OF    )
                                  )
WASHINGTON,                       )
                                  )
            Defendant             )
                                  )

THIS INSTRUMENT HEREBY ACKNOWLEDGES that the undersigned, Kathleen M House, is of legal age, and does hereby swear and affirm that the following is true and accurate, to the best of her knowledge, under penalty of perjury

That I am the plaintiff in the above-named case and make this affidavit in support of the attached motion for continuance of discovery

EFFECT LOSS OF INCOME ON ABILITY TO PROSECUTE

As a consequence of opposition to acts by the State of Washington illegal under federal and state law, I have been deprived of my career, my health, my car, medical care and any means of adequately supporting myself Most importantly, I have been deprived of the self-respect and agency that comes from being able to support myself and to be paid well for

1  work that is recognized as skilled and valuable   These losses have had great
2  impact on my ability to timely pursue this case. I no longer have the home in
3  which my computer, printer and case files were available to me   A month ago,
4  the lack of work sufficient to pay the basic necessities of rent, food,
5  utilities, and telephone service forced me to be evicted from my home of six
6  years   When I first moved there in July of 1996, the rent was slightly over
7  a quarter of my net income   As a result of losing all employment in my
8  profession, that proportion grew to over a hundred percent   Almost all of my
9  possessions, including the majority of the documents in my possession
10 relevant to this case, are in storage and unavailable to me when needed
11 because I have no transportation   I am unable to pay for housing for myself
12 and am now dependant on charity for this   I have spent most of the last four
13 months in efforts to find adequate work and affordable shelter

14     The devastating effect on a person's morale, sense of agency and self-
15 respect of losing one's means of making a living should need no explanation

### EFFORTS AT FINDING WORK

#### 1  Professional work

I have diligently searched for work in the years since 1997.  The facts concerning the failure of the State of Washington to obey federal, state and its own Merit System laws in rehiring me as a computer professional are documented in the Motion for Injunctive Relief I filed in the instant case in 1999   In applying for professional positions outside the State of Washington, I most commonly encountered two obstacles   1   a cessation of interest by the prospective employer after I had given them a resume that included the State of Washington as my most recent employer in the computer

AFIDAVIT IN SUPPORT OF CONTINUANCE -2-   KATHLEEN HOUSE, PRO SE

1  field and after they had had time to contact the my former employers within
2  State of Washington, and  2  the illegal requirement that the applicant waive
3  state and federal rights as to retaliation by former employers in order to be
4  considered as a candidate for the position.

                           2    Unskilled work

6     Because the State of Washington is as uninterested in enforcing equal
7  opportunity laws in the private sector as it is in obeying such laws itself,
8  I have been unable to find adequate work in fields outside my profession
9  Lack of transportation has necessarily limited my search for unskilled work
10 to Olympia  Unskilled jobs in Olympia are segregated by gender:  women
11 overwhelmingly staff the lowest paid, most tedious and most dead-end jobs in
12 Olympia  These jobs typically do not pay enough to support a person  More
13 highly paid entry level and unskilled labor jobs in Olympia are staffed
14 overwhelmingly by men  I was told at many job sites and when inquiring over
15 the phone about advertised manual labor jobs that women were not hired for
16 these positions  In some instances, experience was a requirement for women,
17 but not for men  In positions for which I was hired after great persistence
18 on my part, I earned the respect of the men in these jobs by working as well
19 and as hard as they did, but was not kept on after being told, either by
20 supervisors themselves or by coworkers, that management did not want women in
21 these positions  In other instances, employers denied that positions
22 advertised in the Sunday paper were open the following Monday when the
23 employer was able to identify my gender by my voice over the phone  These
24 positions were advertised again in subsequent issues of the newspaper as
25 being open.  When applying for light industrial work at temporary agencies in
   Olympia, I was invariably told to apply for clerical positions only

AFIDAVIT IN SUPPORT OF CONTINUANCE -3-  KATHLEEN HOUSE, PRO SE

The very openness of employers in stating discriminatory reasons for not hiring women showed that Olympia employers did not fear enforcement of state and federal equal opportunity laws. Intake personnel at the Washington State Human Rights Commission told me that no one had ever complained before about job discrimination in manual labor in Olympia before, that they had not noticed any job segregation in the manual labor market, that in any case, I was required to file a complaint in which my name would be known to the employer in order to have any complaint investigated, that they could offer no protection against my being blacklisted as a result of filing a complaint, that such practice was a common result, that further legislation would be needed to make existing state laws enforceable, and finally, erroneously told me that there were no laws prohibiting retaliation for protesting acts prohibited under the Washington State Human Rights statutes  The intake process at the Human Rights Commission permits this discouragement of workers because a complainant must be interviewed by an intake person from the Commission as a first step in filing a complaint  As this part of the process is entirely verbal, no means exist of holding Human Rights Commission personnel accountable for what they tell complainants  Complainants who attempt to file a written complaint are prevented from doing so, and in attempting to do so are treated with extreme and open discourtesy by Commission employees  Any complaint submitted in writing over these obstacles would almost certainly not be investigated in good faith  Conditions for workers attempting to file complaints with the Washington State Human Rights Commission mirror those I encountered at the Seattle office of the Equal Employment Opportunity Commission and documented in my

AFIDAVIT IN SUPPORT OF CONTINUANCE -4-   KATHLEEN HOUSE, PRO SE

Motion for Appointment of Counsel filed in 1999  The means and motives for discouraging workers with valid complaints are the same for both organizations  lack of accountability for primary contact personnel, a lack of commitment to the legislative goals that created the agencies, insufficient resources to attain agency goals, inadequately trained staff and a workload so overwhelming as to make clearing complaints by any means possible the agency priority

<u>DETERRENT EFFECTS OF COURT DECISIONS</u>

Actions of this court in this and the related discrimination case, C97-5708, have made it appear increasingly futile to continue to prosecute this case  Insurmountable difficulties have been created by a lack of counsel, lack of access to defendants' documents critical to the outcome of this case, and the lack of means to transcribe critical evidence in my possession.  In addition, the course of these cases has shown that safeguards fundamental to the integrity of the legal process may not be relied upon  Such safeguards included the principle of stare decisis, rules of evidence and the laws of perjury  In the related discrimination case, C97-5708, a motion to compel critical, routinely discovered documents was denied in an order based on an 8th Circuit case  This case was cited as controlling precedent where it was apparent the defendants had intentionally mis-cited the case to this circuit  The order was affirmed without comment by the 9th Circuit court in an unpublished decision  The many published 9th Circuit decisions that support this and the previous action are of no use when the principle of stare decisis may be so lightly set aside

A critical subpoena request for C97-5708 was denied on the grounds that

AFIDAVIT IN SUPPORT OF CONTINUANCE -5-   KATHLEEN HOUSE, PRO SE

1  I should have first filed a motion to compel the documents from the
2  defendant   The defendants refused, without specificity, to provide documents
3  in their control that were named in the subpoena request   My subsequent
4  motion to compel these documents from the defendants was denied   The hearing
5  for this motion was cancelled and the motion denied because the Washington
6  State Attorney General's office used its ability to supercede Federal
7  certified mail procedures to falsely state that it was not served   Although
8  I provided the certificate of mailing showing that I had timely served the
9  defendants and evidence showing the State's Attorney General's office ability
10 to falsely record the date on which it received certified mail, this was
11 disregarded by the court   The subpoena request itself was denied based
12 on a false statement by the defendants of the date of the denial I appealed
13 This was directly contradicted by the court-recorded date of the order
14 denying the subpoena request and by my appeal of that request   All of these
15 facts were before the court when the appeal of the motion to compel and the
16 subpoena requests were denied.  Again, the 9th Circuit Court of Appeals
17 confirmed these denials without comment   When clear evidence such as this
18 has no value, any evidence I submit may be of no use

19      Defendants Jim Eby, Tom Owens, Penny Cusick and Sandra Turner committed
20 perjury in sworn documents submitted to this court and to the EEOC   In
21 C97-5708, this was particularly evident in Jim Eby's and Tom Owen's
22 deposition attachments to the motion for summary judgment, in Penny Cusick's
23 affidavit supporting denial of discovery, and in Sandra Turner's submission
24 of falsified documents to the EEOC, and her subsequent statement to this
25 court that the most obviously perjured page of documents had become "lost"

AFIDAVIT IN SUPPORT OF CONTINUANCE -6-   KATHLEEN HOUSE, PRO SE

1  This felony crime carried no penalty for the defendants whatsoever; instead,
2  their unsupported statements as to departmental procedures were granted
3  sufficient credence to dismiss C97-5708 without trial  Where unsupported
4  statements from perjured affiants are accepted as dispositive evidence,
5  defendants' incentive to lie remains as it was from the beginning. to
6  protect agents of the State of Washington from the consequences of their
7  illegal acts   There is no disincentive, as perjury committed in civil cases
8  is not prosecuted

9       The most egregious violation of perjury law has been in this case, by
10 the State Attorney General's office   Sharon Kozar, a paralegal for that
11 office, submitted a perjured affidavit in the instant case over Assistant
12 Attorney General Stewart Johnston's signature.  This is subornation of
13 perjury, ostensibly one of the most serious violations of the laws of
14 perjury   Sharon Kozar also made false statements in C97-5708 that that she
15 had left certain documents at my residence   Stewart Johnston was not alone
16 in this cynical use of a female subordinate in a support staff position to
17 assume the risk of penalties for obstruction of justice    Sandra Turner,
18 the sole African American female employee in the Olympia Wildlife personnel
19 division, was responsible for the submission under oath of altered documents
20 and false statements made by Jim Eby and Chris Ringo, among others   She was
21 the defendants' designated respondent to discovery requests and was also
22 nominally responsible for over five months of obstruction of my 1999 request
23 to correct retaliatory actions concerning my personnel file   Any intentional
24 obstruction of discovery could be attributed to her alone, other obstruction
25 could be attributed to her incapacity, as she had repeatedly admitted her
   lack of any computer skills and had no other particular qualifications for

AFIDAVIT IN SUPPORT OF CONTINUANCE -7-   KATHLEEN HOUSE, PRO SE

1  the duty of respondent    Although Penny Cusick willingly embraced the role of
2  perjurer in this case as early as 1995, and although her promotion from
3  Personnel Officer to head of the agency's personnel division may somewhat
4  compensate her for the risks involved, the beneficiaries of her actions have
5  been male employees of the agency   Whatever her personal inclinations, as an
6  employee of a support unit, she retains the vulnerability shown in her
7  statement to a former subordinate  that to retain her health insurance and
8  her income, she would do anything the department asked of her.  Karen
9  Dickerson testified to Ms  Cusick's making this statement in response to Ms
10 Dickerson' voicing concern over unethical acts by Ms. Cusick in a deposition
11 I took in 1998

12      Two other series of decisions by this court have made prosecuting this
13 case appear increasingly futile   the denial of appointment of counsel,
14 including the court's failure to regulate the acts of attorneys selected by
15 the pro bono panel, and the consequent denial of funds necessary for me to
16 bring deposition and hearing evidence into court.  The necessity of counsel
17 and subsequent failure of attorneys to abide by court directives have been
18 documented in the motions concerning this matter filed in the instant case
19 As a result of the State's forcing me into extreme poverty, I cannot afford
20 transcription of six depositions I took in 1998   The State Personnel Board
21 of Appeals refused to provide a written transcription of either hearing
22 connected with this case.  I cannot afford transcriptions of these hearings
23 I therefore have no means of bringing evidence into court comparable to
24 depositions paid for at state expense and made either by agents of the
25 defendants or by employees whose jobs are at the disposal of the defendant

AFIDAVIT IN SUPPORT OF CONTINUANCE -8-   KATHLEEN HOUSE, PRO SE

CONCLUSION

Since the minute order was issued in this case in November of 2001, I have had to contend with the loss of work adequate to support and house myself, with being forced from my home and made to depend on charity, and with the apparent increasing futility of continuing to pursue this case  All of this has made it insurmountably difficult to write the motions necessary to compel evidence from the defendants  Further discovery is necessary because the direct evidence of my depositions and the Personnel Appeals Board hearings is not available to me, because the defendants refused to comply with the initial discovery requests made in this case and because of the apparently nugatory value of the documentary evidence in my possession

For these reasons, I respectfully request that the court grant an extension of the deadline for discovery cutoff, originally June 3rd, 2002

Dated May 31, 2002

*[signature]*
KATHLEEN HOUSE, PRO SE

Statement of Service

I certify that I have served a copy of the attached
Motion for Continuance of Discovery
and supporting affidavit
on defendant's attorney by leaving same at defendant's
office at 905 Plum Street, SE, Building 3, Olympia,
Washington or by mailing same via first-class mail to
905 Plum Street, SE, Building 3, P O. Box 40145,
Olympia, Washington  98504-0145 on May 31, 2002

*[signature]*
Kathleen M  House

AFIDAVIT IN SUPPORT OF CONTINUANCE -9-   KATHLEEN HOUSE, PRO SE